UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GULAM KHAZRAT ABDUL KADIR,<br><br>         Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center, in his official capacity; et al.,<br><br>         Respondents. | Case No.: 25cv1045-LL-MMP<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF No. 1] |

Before the Court is Petitioner Gulam Khazrat Abdul Kadir's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Injunctive and Declaratory Relief. ECF No. 1 ("Pet."). Respondents filed a Return in opposition to the Petition [ECF No. 6], and Petitioner filed a Traverse in support of his Petition [ECF No. 7]. For the reasons set forth below, the Court **GRANTS** the Petition.

**I. BACKGROUND**

Petitioner is a dual national of Afghanistan and citizen of Russian who crossed into the United States at the San Ysidro port of entry on September 19, 2024 for his scheduled appointment to apply for admission to the United States. Pet. ¶¶ 9, 43. He expressed a fear of return to Afghanistan and Russia and an intention to apply for asylum but was never

granted a credible fear interview. *Id.* ¶¶ 43, 44. U.S. Customs and Border Protection officers detained Petitioner at Otay Mesa Detention Center the same day. *Id.* ¶ 43. In the following days, the Department of Homeland Security issued and served a Notice to Appear on Petitioner to appear before an immigration judge and show why he should not be removed from the United States. *Id.* ¶ 45; ECF No. 1-2 at 6–9.

On December 5, 2024, Petitioner filed a motion for custody redetermination requesting a bond hearing to set a reasonable bond and conditions for his release. Pet. ¶ 46; ECF No. 1-2 at 12. The immigration judge denied the motion stating that the court lacked jurisdiction to redetermine the custody of respondents designated as "arriving aliens" pursuant to 8 C.F.R. § 1003.19(h)(2)(i)(B). Pet. ¶ 47; ECF No. 1-2 at 52.

On December 11, 2024, Petitioner filed a Form I-589 application for asylum with the immigration court. Pet. ¶ 52; ECF No. 1-2 at 63.

On December 16, 2024, Petitioner filed a request for release on parole with U.S. Immigrations and Customs Enforcement. Pet. ¶ 48; ECF No. 1-2 at 57. ICE has not responded to his parole request. Pet. ¶ 51.

On March 21, 2025, an immigration judge held a hearing on Petitioner's asylum application. Pet. ¶ 53. Counsel for ICE cross-examined Petitioner and asked him questions only on his travel to the United States and whether he had ties to the Taliban or the governments of Russia or Afghanistan. *Id.* ¶ 54. Counsel for ICE did not cross-examine the only other witness, Petitioner's wife, and waived closing arguments. *Id.* The immigration judge granted asylum to Petitioner, finding he presented credible testimony and evidence of a well-founded fear of persecution in Afghanistan and Russia. *Id.* ¶ 56. On April 15, 2025, ICE filed a notice of appeal of the granting of asylum and continues to detain Petitioner. *Id.* ¶¶ 57–58.

On April 24, 2025, Petitioner filed the instant Petition, claiming violations of the Fifth Amendment's Due Process Clause and the Administrative Procedure Act due to his prolonged detention without a parole determination or bond hearing. Pet. ¶¶ 109–19; Pet. at 27–28.

## II. LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III. DISCUSSION

Petitioner contends that he is being detained under 8 U.S.C. § 1226(a), which requires an initial bond hearing. Pet. ¶¶ 26–35. He also claims that his prolonged detention, even after being granted asylum, without a bond hearing or consideration for parole violates the Fifth Amendment's Due Process Clause and the Administrative Procedure Act ("APA"). Pet. ¶¶ 109–19.

Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2), which they contend requires mandatory detention during removal proceedings. ECF No. 6 at 20–23. Respondents also argue that Petitioner fails to establish Fifth Amendment and APA claims, and that there are no violations of the Fifth Amendment or the APA. *Id.* at 23–34.

### A. Detention Statute

Petitioner argues that he is detained pursuant to 8 U.S.C. § 1226(a) primarily because he, as a noncitizen applicant for admission, expressed fear but was never referred for a credible fear interview and was instead issued a Notice to Appear and thus placed directly into regular removal proceedings. Pet. ¶¶ 32–33.

A noncitizen who "'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (citing § 1225(a)(1)). "[A]pplicants for admission fall into one

of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.* "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" and "certain other aliens designated by the Attorney General at his discretion." *Id.* "Section 1225(b)(2) is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" with certain exceptions not valid here. *Id.* Section 1226 "applies to aliens already present in the United States." *Id.* at 303.

Expedited removal under § 1225(b)(1) provides that the noncitizen shall be ordered "removed from the United States without further hearing or review" unless he indicates an intention to apply for asylum or a fear of persecution. § 1225(b)(1)(A)(i). A noncitizen in expedited removal proceedings "faces the initial hurdle of having to pass a credible fear screening" before being allowed a hearing before an immigration judge. *de Ramirez v. Rosen*, 842 F. App'x 83, 85 (9th Cir. 2021). Regular removal includes a hearing before an immigration judge without the credible fear hurdle. *Id.* Under § 1225(b)(2), an applicant for admission who is "not clearly and beyond a doubt entitled to be admitted" is detained for a proceeding under the regular removal process of § 1229a. § 1225(b)(2)(A).

"U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," and "[i]t also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289. Applicants for admission who claim a credible fear of persecution under § 1225(b)(1) "shall be detained for further consideration of the application for asylum." *Id.* at 297 (quoting § 1225(b)(1)(B)(ii)). Section §1225(b)(2) applicants for admission "shall be detained for a [removal] proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Id.* at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

The Court does not find that Plaintiff is detained under 8 U.S.C. § 1226(a). As a noncitizen who came to the San Ysidro port of entry seeking admission, Plaintiff is

considered an applicant for admission and thus falls under § 1225(b)(1) or § 1225(b)(2). *See Jennings*, 583 U.S. at 287; *Avilez v. Garland*, 69 F.4th 525, 529 n.7 (9th Cir. 2023) (recognizing that § 1225(b) concerns applicants for admission and § 1225(a) and §1226(c) concern "admitted" noncitizens). The Supreme Court has noted that § 1226(a) applies to noncitizens already present in the United States, which was not Plaintiff's situation. Although it is true that a credible fear interview should be offered when an applicant for admission expresses a fear of persecution or an intention to apply for asylum pursuant to § 1225(b)(1)(A)(ii), the absence of one may be an error, but there is no authority stating that it changes the applicable detention statute to § 1226(a). *See de Ramirez v. Rosen*, 842 F. App'x 83, 85 (9th Cir. 2021) (finding that "even if it had been an error" to deny an applicant a credible fear interview, she was not prejudiced by the lack of one when she was placed in regular removal proceedings instead of expedited removal). Placing Plaintiff in regular removal proceedings instead of expedited removal also does not change the applicable detention statute to § 1226(a) because the government has the discretion to do so. *Flores v. Barr*, 934 F.3d 910, 916 (9th Cir. 2019) ("The government has discretion to place noncitizens in standard removal proceedings even if the expedited removal statute could be applied to them.").

Although federal regulations provide for bond hearings for noncitizens detained under § 1226(a), this does not apply to Plaintiff because the Court finds he is not detained subject to § 1226(a).

    **B.**    **Fifth Amendment Due Process Clause**

Petitioner argues that his prolonged detention, even after being granted asylum, without a bond hearing or consideration for parole violates the Fifth Amendment's Due Process Clause. Pet. ¶¶ 67–88, 109–13.

/ / /

/ / /

/ / /

/ / /

Respondents contend that because Petitioner is detained pursuant to § 1225(b)(2), which mandates detention through the conclusion of the removal process, that is all the process he will receive, and there is therefore no due process violation.[1] ECF No. 6 at 29–30.

The Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* The Ninth Circuit has questioned the constitutionality of certain immigration detention statutes, including § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process. *See Maksin v. Warden, Golden State Annex*,

---

[1] Respondents also argue that Petitioner has failed to satisfy the heightened pleading requirements of a habeas petition to "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." ECF No. 6 (citation omitted). The Court finds Petitioner has met the pleading requirements.

No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted,* No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019))); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116–17 (W.D. Wash. 2019).

Respondents rely on three cases to support their argument that § 1225(b) and its provision for mandatory detention provides all the process that Petitioner is due, but the Court is not persuaded. ECF No. 6 at 29 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), and *Mendoza-Linares v. Garland*, 51 F.4th 1146 (9th Cir. 2022)). In *Thuraissigiam*, the habeas petitioner argued that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 violated "his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding." *Thuraissigiam*, 591 U.S. at 138. The Supreme Court found that the petitioner, as an applicant for admission, was provided "the right to a determination whether he had a significant possibility of establishing eligibility for asylum" pursuant to § 1225(b), and that he had "only those rights regarding admission that Congress has provided by statute." *Id.* at 140 (internal quotation marks and brackets omitted) (quoting §§ 1225(b)(1)(B)(ii), (v)). The Court finds *Thuraissigiam* addressed a noncitizen's right to challenge *admission*, not detention. *See, e.g.*, *Gao v. LaRose*, No. 25-CV-2084-RSH-SBC,

2025 WL 2770633, at *3 (S.D. Cal. Sept. 26, 2025) ("This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*."); *Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025) (finding *Thuraissigiam* inapplicable to cases challenging detention).

The Court finds *Mezei* and *Mendoza-Linares* are also distinguishable. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but stranded in his temporary haven on Ellis Island because other countries [would] not take him back." *Mezei*, 345 U.S. at 207. The Supreme Court recognized Mezei's exclusion for security reasons as different from noncitizens who may be released from detention on bond. *Id.* at 216 ("An exclusion proceeding grounded on danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority for such release exists."). The facts are significantly different because Petitioner has not been excluded as a security risk, does not have a final order of removal, and has been granted asylum. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to issue of whether prolonged detention without a bond hearing violates due process). In *Mendoza-Linares*, the Ninth Circuit found it lacked jurisdiction over Mendoza-Linares's petition because he challenged the negative credible fear determination made by an asylum officer and upheld by an immigration judge. *Mendoza-Linares*, 51 F.4th at 1155. It is inapplicable to Petitioner's detention issue, which does not challenge the merits of an expedited removal order or asylum determination.

Petitioner contends that a six-factor analysis used by some district courts shows that Petitioner's due process rights have been violated and a bond hearing should be ordered. ECF No. 7 at 15 & n.4 (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019)). Respondents do not appear to object to the use of the *Banda* factors, but argue that

if this Court "engage[s] in some sort of weighing analysis, the result would still warrant continued detention" because Petitioner fails to show that the length of his detention offends due process. ECF No. 6 at 11, 30.

In *Banda*, the court considered the following factors to determine whether prolonged mandatory detention under § 1225(b) in a particular case violates the Due Process Clause: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)).

The Court first considers the length of detention and likely duration of future detention. The total length of detention to date is considered the most important factor. *Id.* To date, Petitioner has been in detention for almost thirteen months. Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable. *See, e.g.*, *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (finding detention for nearly nine months weighs in favor of the petitioner); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (over seven months); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) (over nine months); *Brissett v. Decker*, 324 F. Supp. 3d 444, 452 (S.D.N.Y. 2018) (over nine months). Petitioner's future detention can last several more months or even years during the adjudication of Respondents' appeal to the BIA. *See Banda*, 385 F. Supp. 3d at 1119 (finding an appeal to the BIA and subsequent judicial review "may take up to two years or longer"). The Court finds this factor weighs in favor of Petitioner.

In considering the conditions of detention, "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (second alteration in original) (citation omitted). Petitioner is detained at Otay Mesa Detention Center where he is "locked up behind razor

wire and concrete walls in a secured facility," forced to wear "a color-coded prisoner jump suit," forbidden from accessing the internet, restricted access to outdoor space, restricted on visitation, and guarded at all times "with armed guards authorized to inflict punishment for violations of rules." Pet. ¶ 80. Petitioner's confinement at OMDC is "indistinguishable from penal confinement." *Kydyrali*, 499 F. Supp. 3d at 773. The Court finds this factor weighs in favor of Petitioner.

The fourth and fifth factors concern delays in the removal proceedings caused by Petitioner or the government. Petitioner states that he diligently pursued his asylum case and only sought continuances to find an attorney and then for lack of visitation space at the detention facility, which delayed his meetings with counsel. Pet. ¶¶ 81–82. The Court finds Petitioner has not caused undue delays, which weighs in Petitioner's favor. Petitioner argues that ICE Respondents' decision to detain him while appealing the immigration judge's grant of asylum, in contravention of its own policies, caused "the continued delay since March 21, 2025." *Id.* ¶ 83. The Court finds the government's decision to appeal and detain Petitioner did not cause undue delay in the removal proceedings for the purposes of the fifth factor, which thus weighs against Petitioner.

In considering the "likelihood that the removal proceedings will result in a final order of removal," the Court considers "whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. at 1120 (citations omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (citing *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)). Petitioner states that the immigration judge has already granted him asylum, which occurred in less than 20% of asylum applications at OMDC, and contends this indicates his case is strong compared to others. Pet. ¶ 84. Petitioner also argues that it is unlikely that ICE's appeal will succeed because "ICE presented no evidence (other than Mr. Abdul Kadir's passport) or legal argument in removal proceedings, disputed none of Mr. Abdul Kadir's evidence, and asked no cross-examination questions related to credibility." *Id.* ¶ 85. The Court agrees that these are

strong indications that Petitioner will not receive a final order of removal and finds this factor weighs in Petitioner's favor.

With five factors weighing in Petitioner's favor and one against, the Court finds Petitioner's mandatory detention under § 1225(b) has become unreasonable and that due process requires that he be provided with a bond hearing.[2] *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("[W]e note that the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention."). At the bond hearing before a neutral immigration judge, Respondents "must justify his continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released." *Gao*, 2025 WL 2770633, at *5; *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024) (noting that due process requires "the government to prove dangerousness or risk of flight by clear and convincing evidence" at a bond hearing for noncitizens subject to prolonged detention (citing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011))).

Accordingly, the Court **GRANTS** Petitioner's Petition.

## IV.   CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition under 28 U.S.C. § 2241 for an individualized bond hearing before an immigration judge. Within **fourteen days** of this Order, Respondents are directed to arrange an individualized bond hearing before a neutral immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community

///

///

///

///

---

[2] The Court declines to reach Petitioner's remaining argument that his detention violates the Administrative Procedure Act.

or a flight risk if released. If no hearing occurs within fourteen days of this Order, Petitioner shall be released from Respondents' custody.

**IT IS SO ORDERED**.

Dated: October 15, 2025

Honorable Linda Lopez
United States District Judge

12

25cv1045-LL-MMP